# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE　　　　　　　）
COMPLAINT OF BRUCE GIBSON　　　）
and SOUTHERN EQUIPMENT　　　　　）　　Case No. CIV-07-055-SPS
RENTALS, L.L.C., as owners of the　　　）
vessel NASHVILLE CATZ, for　　　　　　）
exoneration from, or limitation of,　　　　）
liability.　　　　　　　　　　　　　　　）

## OPINION AND ORDER
## ENFORCING SETTLEMENT AGREEMENT

In this action pursuant to the Limitation of Liability Act (the "LOLA"), 46 U.S.C §§ 30501-30512, the Plaintiffs in Limitation Bruce Gibson and Southern Equipment Rentals, L.L.C. seek enforcement of a settlement agreement they contend was reached at a court-ordered settlement conference on July 14, 2008. The Plaintiffs contend that they settled all claims between themselves and the Claimants Trisha and Jason Mineo at the conference, but the Mineos subsequently refused to honor the settlement agreement by executing mutual releases and a stipulation of dismissal. For the reasons set forth herein, the Plaintiffs-In-Limitation's Motion to Enforce Settlement, for Default Judgment, and for the Imposition of Sanctions and Brief in Support Thereof [Docket No. 157] is hereby GRANTED.

### A. Background

On September 2, 2006, the Plaintiffs' boat the Nashville Catz collided with Gordon Mineo's boat the Flash Gordon during a poker run on Lake Texoma. Five persons died in the accident: Gibson's wife Myra (passenger on the Nashville Catz), Gordon Mineo (father of the Claimants) and his wife Andrea, and Justin and Amy Lane (passengers on the Flash

Gordon). On February 22, 2007, the Plaintiffs filed a complaint under the LOLA seeking exoneration or limitation of liability for the accident. The following parties filed claims in the case: (i) Bruce and Pam Lane (parents of Justin Lane) individually, and as personal representatives of Justin and Amy Lane's estate and guardians of their minor children, Sebastian and Kaci Lane; (ii) Aleida Schijf (mother of Amy Lane) individually; and, (iii) the Claimants, Trisha Mineo, individually and as the personal representative for Gordon and Andrea Mineo's estates, and Jason Mineo, individually.

These parties attended a court-ordered settlement conference on July 14, 2008. At the conclusion of the conference, their attorneys signed a typed memorandum reflecting, *inter alia*, that the Plaintiffs' insurer would pay its policy limits to Schijf and the Lanes but nothing to the Mineos. For their part, the Mineos (represented by attorney Brian Landa, who was present at the settlement conference, and James Francis, who participated by phone) agreed to execute mutual releases with the Plaintiffs for "all known and unknown claims" and to use reasonable efforts to obtain a release of claim from Andrea Mineo's father Ronald Weibelt. Schijf and the Lanes did not agree to release the Mineos. The memorandum was signed on behalf of the Mineos by their attorney Landa *See* Docket No. 174, Plaintiff's Exhibit No. 1.

The settlement judge conducted a "friendly suit" and approved the settlement as to the minors on August 13, 2008, but the Mineos ultimately refused to sign the Settlement Agreement and Release or the Stipulation of Dismissal prepared by the Plaintiffs to finalize the settlement agreement. This prompted the Plaintiffs-In-Limitation's Motion to Enforce Settlement, for Default Judgment, and for the Imposition of Sanctions and Brief in Support

Thereof [Docket Nos. 157]. The Mineos objected, contending that they never authorized Landa to sign the memorandum on their behalf and that any agreement was vitiated by fraud and a conflict of interest. The Court conducted an evidentiary hearing and, *inter alia*, heard live testimony from Trisha Mineo, their erstwhile attorneys Landa and Francis (who were allowed to withdraw from representation of the Mineos upon filing of the motion to enforce) and the settlement judge.[1]

### B. Discussion

Generally, "'[a] trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.'" *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004), *cert. denied*, 543 U.S. 1147 (2005), *quoting United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). "However, if material facts concerning the existence of an agreement to settle are in dispute, the Court should hold a plenary hearing to determine the enforceability of an alleged settlement agreement rather than summarily enforce the same." *United States v. Buckner & Moore, Inc.*, 505 F. Supp. 409, 410 (W.D.

---

[1] The Plaintiffs-In-Limitation's Motion to Enforce Settlement, for Default Judgment, and for the Imposition of Sanctions and Brief in Support Thereof is actually docketed twice, as a motion to enforce [Docket No. 157] and separately as a motion for default judgment against the Mineos (assuming there is no settlement) and for sanctions [Docket No. 158]. Because the Court finds that the settlement agreement should be enforced, the request for default judgment is moot, and the Court declines at this time to impose sanctions on the Mineos (although the issue may be revisited if they persist in refusing to sign the release and dismissal with prejudice). Accordingly, the second docketing of the Plaintiffs-In-Limitation's Motion to Enforce Settlement, for Default Judgment, and for the Imposition of Sanctions and Brief in Support Thereof [Docket No. 158] should be denied. The Plaintiffs-in-Limitation's Request for Judicial Notice [Docket No. 173] and the Plaintiffs-in-Limitation's Notice of and Request for Taking Judicial Notice of Court Documents of the Probate of the Estate of Andrea Ann Mineo [Docket No. 179] should also be denied, as the Court did not consider the evidentiary materials submitted therewith.

Okla. 1979), *citing Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir. 1975). When "'the substantive rights and liabilities of the parties derive from federal law[,]'" it is federal contract law that applies to "'[q]uestions regarding the enforceability or validity of . . . [settlement] agreements[.]'" *Swift-Eckrich, Inc. v. Advantage Systems, Inc.*, 55 F. Supp. 2d 1280, 1284 (D. Kan. 1999), *quoting Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) ("Because the claims in this case are premised on federal general maritime law, we apply federal law to decide the validity of the agreement to settle the claims."). *See also Petition of Mal de Mer Fisheries, Inc.*, 884 F. Supp. 635, 639 n.4 (D. Mass. 1995) ("Federal law applies to the issue of an attorney's authority to settle a civil action brought under federal law."), *citing Michaud v. Michaud*, 932 F. 2d 77, 80 n.3 (1st Cir. 1991). Although "'the resolution of factual issues and conflicting evidence [is] solely within the province of the district court[,]'" *Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1270 (10th Cir. 2002), *quoting Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 511 (10th Cir. 1985), "[a] district court does not have the power to impose a settlement agreement when there was never a meeting of the minds." *Swift-Eckrich, Inc.*, 55 F. Supp. 2d at 1284, *quoting Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.*, 958 F. 2d 355, 359 (Fed. Cir. 1992), *citing Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983).

The Plaintiffs contend that they reached a settlement agreement with the Mineos at the settlement conference and that it should be enforced. The Plaintiffs argue that they gave up personal injury, survival, and wrongful death claims against the estate of Gordon Mineo (and their insurer gave up a substantial subrogation claim as well) upon the promise by the

Mineos to execute a release and stipulation of dismissal, which they authorized their attorney Landa to make on their behalf by signing the written memorandum at the close of the settlement conference. The Court agrees with the Plaintiffs for several reasons.

First, the Mineos have simply not persuaded the Court that they refused to settle their claims at the settlement conference or that their attorney lacked authority to sign the settlement memorandum on their behalf. *See, e. g.*, *Swift-Eckrich, Inc.*, 55 F. Supp. 2d at 1283 (finding that when "an attorney has entered into an agreement to settle a case, a party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given.") [quotation omitted]. *See also Harris v. Arkansas State Highway & Transportation Department,* 437 F.3d 749, 750-51 (8th Cir. 2006). Trisha Mineo testified that she and her brother did not agree to settle their claims at the settlement conference, that their attorney Landa was not authorized to sign anything on their behalf and that they never even saw the written memorandum or knew of its signing until after the settlement conference. But Landa flatly contradicted this testimony; he testified, *inter alia*, (i) that he discussed the difficulty in bringing a claim on behalf of Andrea Mineo's estate, and the potential for claims against Gordon Mineo's estate by the Plaintiffs and their insurer; (ii) that he read the settlement memorandum to the Mineos as it was being drafted and signed it with their consent; and, (iii) that the settlement judge asked the Mineos if they had any questions or concerns about the settlement, and they assured her they did not.[2] The Court

---

[2] The settlement judge was present at the evidentiary hearing and testified over the objection of counsel for the Mineos. Although the testimony was allowed at the time, the Court has

finds Landa's testimony more believable on this point, *see, e. g., Harris*, 437 F.3d at 751 (noting deference given to district court's credibility determinations), *citing Mueller v. Guardian Life Insurance Co.*, 143 F.3d 414, 416 (8th Cir. 1998); *see also Heizer v. Shepherd*, 236 Fed. Appx. 366, 370 (10th Cir. 2007) ("Faced with conflicting testimony, the magistrate judge made credibility determinations in accord with the role of fact-finder.") [unpublished opinion]; Fed. R. Civ. P. 52(a)(6) ("due regard [must be given] to the trial court's opportunity to judge the witnesses' credibility."), and the Mineos have therefore failed to persuade the Court there was no settlement agreement or that authority was lacking. *See, e. g., Thomas v. Colorado Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir. 1966) ("[A]n attorney of record is presumed to have authority to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon affirmative proof by the party seeking to vacate the judgment that the attorney had no right to consent to its entry.") [citation omitted]. Consequently, the Court concludes that the Mineos *did agree* to settle their claims on the terms contained in the written memorandum and *did authorize* Landa to sign on their behalf. *See McEnany v. West Delaware County Community School District*, 844 F. Supp. 523, 529 (N.D. Iowa 1994) ("To be valid, a party must give 'knowing and voluntary' consent to a settlement agreement."), *citing Alexander v. Gardner-Dever Co.*, 415 U.S. 36, 52 n.15 (1974).[3]

---

since reconsidered and now sustains the objection. The Court will therefore not rely on the settlement judge's testimony to resolve any disputed factual issues.

[3] Although not the final version, the written memorandum contained all the material terms of the settlement agreement and was intended by the parties to be legally binding and

Second, any issues between the Mineos and their attorneys were insufficient to vitiate the settlement agreement as between the Mineos and the Plaintiffs. The Mineos complain that their attorneys had an undisclosed (and unconsented) conflict of interest arising out of combined representation of Trisha Mineo in all her capacities. They cite no authority, however, for the proposition that any conflict of interest their attorneys may have can be imputed to the Plaintiffs. *See Harris*, 437 F.3d at 752 ("'[A]rguments addressing the adequacy of [an attorney's] legal representation, regardless of their merit, are irrelevant' to the determination of whether a party gave her attorney express authority to enter into a settlement agreement."), *quoting Mueller*, 143 F.3d at 416. *See also Macktal v. Secretary of Labor*, 923 F.2d 1150, 1157 (5th Cir. 1991) ("Considering the ethical duties of an attorney to his client, the client's right to seek new counsel, and the availability of a direct action against the attorney, the Secretary . . . refused to void the settlement based on Macktal's allegations."). The Mineos do not allege, for example, that their attorneys were somehow acting not for their interests but instead for those of the Plaintiffs. Their argument is essentially that they made a bad deal because they were badly advised. This is no reason to set aside an otherwise valid settlement agreement. *See McEnany*, 844 F. Supp. at 531 ("The parties should not be deprived of the benefits of the settlement agreement on the ground that

---

enforceable. *See, e. g., McEnany*, 844 F. Supp. at 529 ("[T]he fact that 'the parties left insubstantial matters for later negotiation . . . does not vitiate the validity of the agreement reached,' . . . if the parties agreed to all material terms."), *quoting Trnka v. Elanco Products*, 709 F.2d 1223, 1226 n.2 (8th Cir. 1983) and *citing Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985).

one of the parties now rejects it as inadequate[.]"), *citing Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985).

The Mineos do raise the specter of fraud but make no accusation that the Plaintiffs committed it or otherwise participated therein. *See Callen v. Pennsylvania Railroad Co.*, 332 U.S. 625, 630 (1948) ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted."). The cases cited by the Mineos do not suggest that any fraud practiced by the Mineos' attorneys could be imputed to the Plaintiffs, who simply bargained at arm's length and in good faith to settle the case and is therefore entitled to enforce the agreement. *See Mid-South Towing Co.*, 733 F.2d at 392 ("[B]ecause the parties negotiated at arms-length and there was no taint of 'fraud, deception, coercion or overreaching,' the settlement was binding[.]"), *quoting Strange v. Gulf & South American Steamship Co.*, 495 F.2d 1235 (5th Cir. 1974). The Court therefore rejects fraud as basis for refusing to enforce the settlement agreement.

Finally, at the close of the evidentiary hearing the Court directed the parties to address whether the Claimant Trisha Mineo needed the approval of the court probating Andrea Mineo's estate in order to enter into a binding settlement agreement on behalf of the estate. The parties agree that such approval *was not* required, and the Court so finds.

### C. Conclusion

In summary, the Court concludes that the Mineos agreed to settle their claims herein at the settlement conference and authorized their attorney to sign the typed memorandum on

their behalf memorializing the settlement. Accordingly, the Plaintiffs-In-Limitation's Motion to Enforce Settlement, for Default Judgment, and for the Imposition of Sanctions and Brief in Support Thereof [Docket No. 157] is hereby GRANTED, and the Claimants Trisha Mineo and Jason Mineo are hereby ORDERED to sign an appropriate release and a stipulation of dismissal. The Plaintiffs-In-Limitation's Motion to Enforce Settlement, for Default Judgment [Docket No. 158] is otherwise DENIED, although the Court may revisit the issue of sanctions if the Claimants Trisha Mineo and Jason Mineo refuse to sign as ordered. Finally, the Plaintiffs-in-Limitation's Request for Judicial Notice [Docket No. 173] and the Plaintiffs-in-Limitation's Notice of and Request for Taking Judicial Notice of Court Documents of the Probate of the Estate of Andrea Ann Mineo [Docket No. 179] are hereby DENIED, as the Court did not consider the evidentiary materials submitted therewith.

**IT IS SO ORDERED** this 25th day of September, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**